No. 29,533.

The City of Ottawa, *Appellant*, v. The Public Service Commis-
sion of the State of Kansas; R. M. Pickler et al., as Members
of said Public Service Commission; The Municipal Power
Transmission Company, and The Kansas City Power and
Light Company, *Appellees*.

(288 Pac. 556.)

Opinion filed June 7, 1930.

*J. L. Shelden,* of Ottawa, *Bennett R. Wheeler, S. M. Brewster, John L. Hunt,
Virgil V. Scholes, Margaret McGurnaghan,* all of Topeka, and *B. L. Glover,* of
Kansas City, Mo., for the appellant.

*C. W. Steiger, C. J. Putt,* both of Topeka, *F. M. Harris,* of Ottawa, and
*Fred Robertson,* of Kansas City, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This is an action by the city of Ottawa to have de-
clared void and to set aside an order of the public service commis-

sion permitting the Municipal Power Transmission Company to sell its properties to the Kansas City Power and Light Company, also an order of the public service commission granting a certificate of convenience and authority to the Kansas City Power and Light Company to operate that property. The trial court made findings of fact and conclusions of law and rendered judgment for defendants. Plaintiff has appealed.

About 1906 the city of Ottawa, a city of the second class, being authorized by statute (R. S. 12-842) to do so, built a municipal water and electric light plant for the purpose of supplying the inhabitants of the city, and such contiguous territory as it could serve, with water and electric energy for light and other purposes. In May, 1918, the city of Williamsburg, a small town in Franklin county, desiring electricity for its inhabitants, entered into a contract with the city of Ottawa by which the city of Williamsburg agreed that it would build an electric transmission line from Williamsburg to the electric plant of the city of Ottawa and purchase electric current for its use to be transmitted over such line for a period of twenty years. The city of Williamsburg built this transmission line, also a distribution system in the city. Under this contract the city of Ottawa sold its electric energy at its switchboard. It had no duties with respect to building the transmission line or distribution system of the city of Williamsburg, or of maintaining such line or system. The contract provided, among other things, that it could not be assigned by the city of Williamsburg without the consent of the city of Ottawa. In January, 1920, the city of Richmond made a similar contract with the city of Ottawa and built a transmission line from Richmond to Ottawa, also a distribution system. In October, 1921, the city of Quenemo made a similar contract with the city of Ottawa and built a distribution system and transmission line from Quenemo to Ottawa. All of these contracts were similar in their terms. Some of the cities so contracting with the city of Ottawa had contracts by which they furnished electric energy to other small cities.

I. C. Bushong had been engaged in the electrical construction business and, as a contractor, had constructed the transmission lines and distribution systems of the small cities above mentioned. Early in 1925 Bushong purchased the transmission line and distribution system of the city of Richmond, and on March 14, 1925, the city of Ottawa consented to the transfer of the contract between it and the

city of Richmond to Bushong. About March 21, 1925, Bushong entered into a contract with Joseph C. Porter, president of the Kansas City Power Securities Corporation, which corporation holds the common stock of the Kansas City Power and Light Company, which company has a generating plant at Kansas City, Mo., and a distribution system in Kansas City, Mo., and contiguous territory, a part of which is in Kansas, by the terms of which Bushong was to organize the Municipal Power Transmission Company and to purchase and operate electric transmission lines and distribution systems in Kansas near Kansas City, Mo., and in the vicinity of Ottawa. The Municipal Power Transmission Company was organized as a Kansas corporation. Its stock, except five shares for qualifying directors, was issued to Bushong; all the stock was then placed with the Kansas City Power Securities Corporation as collateral for money to be advanced for the purchase of electric transmission lines and distribution system, and rebuilding and extending them into the territory mentioned. Bushong was general manager of the Municipal Power Transmission Company, with headquarters at Ottawa. In April, 1925, Bushong transferred to the Municipal Power Transmission Company the transmission line and distribution system he had purchased from the city of Richmond, and later this company purchased the transmission lines and distribution systems of Williamsburg and Quenemo. The city of Ottawa consented to the assignment of their contracts by Bushong and the cities to the Municipal Power and Transmission Company. The transmission lines and distribution systems so purchased by the Municipal Power and Transmission Company had been permitted to deteriorate until they did not give good service, and were rebuilt, repaired and extended by the Municipal Power and Transmission Company. On April 14, 1926, the city of Ottawa entered into an agreement with the Municipal Power and Transmission Company which recites that the company owned these various transmission lines from the small cities to Ottawa, and planned to construct other lines; that it was desired to cancel the various different contracts under which the small cities originally, and the transmission company at that time, was purchasing electricity from the city of Ottawa, and to make a new contract by which the transmission company agreed to purchase, for a term of twenty years from the date of the contract, electricity from the city of Ottawa for its transmission and distribution system in Franklin and adjoining counties. This contract,

like the previous one, contained a provision that it could not be assigned without the consent of the city of Ottawa. The Municipal Power Transmission Company extended its transmission lines and distribution system to several other small cities in Franklin and adjoining counties, and also to a number of farms. It purchased a transmission line and distribution system from the city of Lane, in Miami county, which was under contract to purchase electric energy from the city of Osawatomie, and continued to carry out that contract. Some other extensions were made, the details of which need not be set out. In 1927 the city of Ottawa made improvements to its water and light plant at a cost of about $100,000, and in doing so took into consideration its contract with the Municipal Power Transmission Company with its present and possible future needs. All of this expenditure was not made because of its contract with the transmission company, but part of it was to improve the waterworks plant, and part of it was because of the increased use of electric energy within the city of Ottawa, which increase had been even more rapid than that of the Municipal Power Transmission Company. In October, 1928, the Municipal Power Transmission Company entered into a contract with the Kansas City Power and Light Company by which the latter company purchased the property of the former company for the sum of $150,000, to be paid to the holders of the capital stock of the selling company, and in addition thereto assumed the payment of all of the outstanding debts, which then exceeded $300,000, of the selling company. The city of Ottawa was requested to consent to the assignment of the agreement between it and the Municipal Power Transmission Company of April 14, 1926, to the Kansas City Power and Light Company, but declined to do so. In November, 1928, the Municipal Power Transmission Company petitioned the public service commission (docket No. 10,446) for permission to sell its property to the Kansas City Power and Light Company. About the same time the Kansas City Power and Light Company petitioned the public service commission (docket No. 10,441) for a certificate of convenience and authority to operate the property it was purchasing from the Municipal Power Transmission Company. These matters came on to be heard before the public service commission. The communities being served by the Municipal Power Transmission Company made no objection. The city of Ottawa objected, on the ground that it had encouraged the development of the ter-

ritory for the use of electric energy with the view of supplying the same from its plant, and had expended large sums in constructing its plant, and that to permit the transfer of the property of the transmission company to the Kansas City Power and Light Company, which had a large generating plant of its own, would ultimately cause the loss of the territory to the city of Ottawa. The public service commission granted both petitions, effective in thirty days, four members voting in favor, and one dissenting. The city of Ottawa applied to the public service commission for a rehearing in docket No. 10,446. Two of the members of the public service commission voted in favor of granting such a rehearing, two voted in the negative, and one declined to vote. The city of Ottawa then brought this action. The trial court, after having made findings of fact, much more in detail than is here stated, made conclusions of law as follows:

"1. The contract of April 14, 1926, between the city of Ottawa and the Municipal Power Transmission Company is one over which the public service commission would have no jurisdiction, and is a contract which that commission would be powerless to enforce, set aside or modify. Under the law, the commission would have no authority to substitute one party for another in this contract.

"2. Under the statutes of this state, the public service commission has no jurisdiction, power or authority over an electric power plant owned and operated by a city of the second class, nor to allocate territory between a utility over which the commission does have jurisdiction and such plant of such city.

"3. The jurisdiction, power and authority of the public service commission respecting a proposed purchaser of an electric power utility in Kansas is limited, in a case such as this, to the question whether the public convenience will be adequately served by the proposed purchaser in the event it be permitted to assume control and operation of the property involved.

"4. The certificate of convenience and authority granted in this case to the Kansas City Power and Light Company covers, and was intended to cover, only the territory occupied and served by the Municipal Power Transmission Company, which territory is being given electric service by no other concern.

"5. The action of the public service commission in approving the sale made, and granting the certificate of convenience and authority, was within the sound discretion of the commission, and was not unreasonable, arbitrary, capricious or unlawful.

"6. Judgment should be entered in this case upholding the order and certificate of the public service commission, but further adjudging that the rights of the city of Ottawa, under its contract with the Municipal Power Transmission Company, cannot be affected or prejudiced by such order or certificate without its consent."

Appellant contends that the orders of the public service commission sought to be set aside are void for the reason that before the expiration of thirty days, when they were to go into effect, on an application for rehearing on one of the orders, only two of the five members of the commission voted to deny the rehearing. From this it is argued that a majority of the commission was not in favor of the orders at the time they went into effect. We regard the point argued as being without substantial merit. It does not follow that a member of the commission who voted for rehearing would have voted against the granting of the orders on a rehearing, if one had been had. The orders had been made by the commission (R. S. 66-111), a majority of the commission was not in favor of a rehearing, hence the order stood, so far as the commission was concerned.

Appellant argues that the orders sought should have been denied by the public service commission on their merits for the reason that the city of Ottawa had established a power plant at great expense, had encouraged the use of electricity in near-by territory, and was then supplying electricity to the territory, and that if the Kansas City Power and Light Company were permitted to buy the lines, systems and property of the transmission company it ultimately, and perhaps as soon as it could do so, would cease purchasing electricity from the city of Ottawa. There is not a great deal of merit to this argument. So far as the small cities and outlying communities are concerned, the real question is, How can they best be supplied with electric energy for their needs? Had they waited for the city of Ottawa to build transmission lines and distribution systems for them perhaps they never would have had electricity. They obtained that in the first place by building their own distribution systems and their own transmission lines. The city of Ottawa did not obligate itself in any way for the construction and maintenance of those systems and lines. After these were built the small cities found it difficult to maintain them, for the reason that they were unable to employ, at sums they were able to pay, competent superintendents, linemen, etc., to keep their systems and lines in repair. The result was, these deteriorated and the service was poor and unsatisfactory. When the Municipal Power Transmission Company took these lines over it was necessary to rebuild them. They were put in good condition and furnished satisfactory service, but in doing this the transmission company had exhausted

its credit, or at least to the extent that it became difficult for it to finance itself. The trial court found, amoñg other things, that there was reason to believe that the sale of the property to the Kansas City Power and Light Company would effect a saving in financing expenses, and would be advantageous in the purchase of supplies and equipment, which benefits should be reflected in reduced rates to the consumers. Hence, so far as the communities to be served were concerned, it is reasonable to anticipate an advantage to them resulting from the purchase of the property by the Kansas City Power and Light Company.

Appellant contends that it never would have entered into the contract of April 14, 1926, with the Municipal Power Transmission Company if it had known that this company had any connection with the Kansas City Power and Light Company, or any company having a generating plant of its own, and contends that Bushong represented at the time that contract was made that the Municipal Power Transmission Company was a Kansas corporation, all of its stock being owned by himself and his immediate friends. The trial court found that there was no intentional misrepresentation by Bushong in that connection. Appellant complains of that finding. We have examined all the evidence relating thereto and find the finding well supported by the evidence. But this is not an action to set aside that contract because of fraud which induced its execution. It should be noted that the contract was favorable to the city of Ottawa, at least to the extent that it extended for twenty years from its date the obligation of the Municipal Power Transmission Company to purchase electricity from Ottawa, while the contracts previously existing, although made for twenty years, had run from four to six years. It should be noted, also, that this contract was not set aside by the public service commission, nor by the court in this action, but stands, so far as these proceedings are concerned, as a binding contract between the parties. The city of Ottawa has all that it had under its contract with the transmission company, and it is difficult to see where it is in a position to complain.

Appellant argues that the service now being furnished to the small cities and communities supplied by the Municipal Power Transmission Company is good, no complaint is being made of it, and that there is no assurance that these cities and communities will be better served by the Kansas City Power and Light Company

874

than they are now served; hence, that there is no reason for a change in the ownership of the property. We do not understand it to be the rule that a property has to be deteriorated to the extent that it gives poor service before it can be sold by its owners. Naturally, if the service were poor and the purchaser contemplated improving the service, that fact would constitute a reason for permitting the sale; but if the service is good, and the purchasing company will continue good service, possibly at a lower rate, we see no reason why the public service commission should object to the transfer of title. The individuals owning the property should have something to say as to whether they can sell it or not. To deny them that right would be to deny to them an incident important to the ownership of property. (*Utilities Co. v. Public Service Co.*, 154 Md. 445. See, also, 17 Mo. Pub. Ser. Com. Rep. 276.)

We find no error in the record. The judgment of the court below is affirmed.

Burch, J., not participating in the decision.